IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KERRY SHANNON, | ) CIVIL NO. CV04-00086SPK/LEK |
| | ) |
| Plaintiff, | ) **MEMORANDUM IN SUPPORT OF MOTION** |
| | ) |
| vs. | ) |
| | ) |
| CITY AND COUNTY OF HONOLULU; | ) |
| HONOLULU LIQUOR COMMISSION; | ) |
| DENNIS ENOMOTO; in his official | ) |
| capacity as chairman of the | ) |
| Honolulu Liquor Commission; | ) |
| WALLACE W. WEATHERWAX, | ) |
| individually and in his | ) |
| capacity as an agent and | ) |
| employee of the Honolulu Liquor | ) |
| Commission; JOHN CARROLL, | ) |
| individually and in his | ) |
| capacity as an employee of the | ) |
| Honolulu Liquor Commission; | ) |
| ANNA HIRAI, individually and in | ) |
| her capacity as an employee of | ) |
| the Honolulu Liquor Commission; | ) |
| ALLAN GAYLORD, individually and | ) |
| in his capacity as an employee | ) |
| of the Honolulu Liquor | ) |
| Commission; JOHN DOES 1-10, | ) |
| JANE DOES 1-10; DOE | ) |
| CORPORATIONS | ) |
| 1-10; DOE PARTNERSHIPS 1-10; | ) |
| DOE GOVERNMENTAL AGENCIES 1-10, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION

This is an employment case in which the Plaintiff Kerry
Shannon ("Plaintiff") alleges that certain employees within the
Honolulu Liquor Commission retaliated against (and constructively
terminated) him because of his participation and involvement in a

joint investigation by the Federal Bureau of Investigation ("FBI") and the Honolulu Police Department ("HPD") into criminal activities at the Honolulu Liquor Commission.

There is no evidence, however, to support any of Plaintiff's claims of retaliation.  The only evidence is that Plaintiff was not retaliated against for his alleged participation in an FBI/HPD investigation, but resigned/retired voluntarily.

Accordingly, Defendants CITY AND COUNTY OF HONOLULU, HONOLULU LIQUOR COMMISSION, DENNIS ENOMOTO, in his official capacity as chairman of the Honolulu Liquor Commission, WALLACE W. WEATHERWAX, individually and in his capacity as an agent and employee of the Honolulu Liquor Commission, JOHN CARROLL, individually and in his capacity as an employee of the Honolulu Liquor Commission, ANNA HIRAI, individually and in her capacity as an employee of the Honolulu Liquor Commission, and ALLAN GAYLORD, individually and in his capacity as an employee of the Honolulu Liquor Commission (collectively "Defendants") now move for dismissal, or in the alternative, for summary judgment, on all causes of action alleged in the Complaint filed February 5, 2004.

## II.  <u>BACKGROUND OF RELEVANT FACTS.</u>

Plaintiff was employed as an Investigator with the Honolulu Liquor Commission from June 1, 1999, until his medical

retirement on February 14, 2003. <u>See</u> Complaint at ¶ 15. During his employment with the Liquor Commission, Plaintiff's immediate supervisor was Defendant Allan Gaylord, but Defendants Wallace Weatherwax (Liquor Commission Administrator), Defendant Anna Hirai (Administrative employee) and Defendant John Carroll (Chief Investigator) exercised supervisory powers over the Plaintiff from time to time. <u>Id.</u> at ¶ 19.

In January of 2002, Plaintiff was approached by the Federal Bureau of Investigation ("FBI") and the Honolulu Police Department ("HPD") to cooperate in an investigation into alleged corruption within the Liquor Commission. <u>Id.</u> at ¶ 20. Plaintiff agreed to cooperate and testify before a Federal Grand Jury. <u>Id.</u> at ¶¶ 21-22.

Plaintiff alleges – and Defendants deny - that after Defendants Weatherwax, Carroll, Hirai and Gaylord (collectively, the "Employee Defendants") became aware of Plaintiff's Grand Jury testimony, they subjected the Plaintiff to the following retaliatory actions:

- They informed Plaintiff's fellow investigators of the Plaintiff's testimony "for the express purpose of bringing pressure to bear on Plaintiff to cease cooperating with said investigation"; <u>Id.</u> at ¶ 25.

- They participated in a course of "harassment and threats and other types of hostility at work which was designed to intimidate Plaintiff"; <u>Id.</u> at ¶ 26.

- One or more of the Employee Defendants delayed the processing of Plaintiff's workers' compensation

3

claim (for a shoulder injury) without cause or
explanation; Id. at ¶ 28, and

- As a result of this alleged conduct, the Employee
  Defendants forced the Plaintiff to resign from
  employment (*i.e.*, they "constructively discharged"
  him). Id. at ¶ 30.

In his answers to interrogatories, Plaintiff alleged

the following instances of alleged harassment:

- Plaintiff was asked by the Employee Defendants to
  disclose what had occurred at the Grand Jury
  Proceedings.  When Plaintiff refused, the Employee
  Defendants were visibly displeased;

- Was physically and verbally threatened to remove
  the name of a liquor commission investigator from
  a report;

- In early March 2002, Employee Defendants warned
  Plaintiff, Arthur Andres, and Kenneth Wright that
  they would end up like Charles Wiggins if they did
  not maintain their loyalty to the Liquor
  Commission;

- In a July 2002 meeting, Defendant Weatherwax
  reprimanded Plaintiff for making derogatory
  comments about commissioners regarding the Happy
  Days Chinese Restaurant; and

- The attitude of the Employee Defendants towards
  Plaintiff changed in February 2002 since they
  became aware of his cooperation with the
  investigation.

See **Exhibit "A,"** Plaintiff's Response to Defendant City and

County of Honolulu's First Request for Answers to Interrogatories

to Plaintiff Kerry Shannon.

Plaintiff also claims the existence of a pattern of

harassment that started in February 2002, including:

- Plaintiff's computer being turned off when he was not present, causing him to lose data, items moved on his desk, and people opening his e-mails;

- His protective body armor was stolen;

- Bad mouthing by Employee Defendants, primarily Allan Gaylord and John Carroll;

- Bad assignments to out of the way places which were dangerous, such as Kuhio Park Terrace and Mayor Wright Housing;

- Allan Gaylord voiced veiled threats to Plaintiff about Charles Wiggins and Warren Collazo;

- Was receiving the "cold shoulder" from his fellow inspectors starting in February 2002;

- He was reassigned to licensing in July 2002, but was forced to keep his desk located in the enforcement section;

- Four anonymous phone calls threatening his life;

- There was a dead rat found on his car;

- Plaintiff's car was stolen at the very end of January or beginning of February 2002;

- Plaintiff was assigned to the licensing division which caused him to work with computers which led him to aggravate a pre-existing neck injury;

- He was informed that others were making fun of him;

- Attempts to have Employee Defendants to do something about the harassment were ignored; and

- A number of notices that he issued to Rainbow Country Liquors had either disappeared or were simply not prosecuted, which led him and another officer to be sued by Rainbow Country Liquors.

See Exhibit "A."

5

There is no proof that these events or allegations were done by Defendants, or at Defendants' direction, as retaliation or harassment.

## III. <u>PLAINTIFF'S CLAIMS.</u>

On February 25, 2004, the Plaintiff filed the instant action against the Employee Defendants, as well as the City and County of Honolulu, the Honolulu Liquor Commission, and John Spierling[1] in his official capacity as chairman of the Honolulu Liquor Commission (collectively "CITY Defendants"), alleging the following causes of action:

- <u>Count I (42 U.S.C. § 1983)</u>: Defendants violated Plaintiff's First Amendment Rights.

- <u>Count II (HRS § 378-62)</u>: Defendants's conduct violated HRS § 378-62.

- <u>Count III (Negligent Supervision)</u>: Defendants were negligent by failing to supervise Plaintiff in such a way as to protect him from harassment and hostile conduct by other Liquor Commission employees and failing to investigate his reports to CITY Defendants.

- <u>Count IV (Civil Conspiracy)</u>: Defendants entered into an agreement to cause Plaintiff's working environment to become so hostile that he would cease cooperating with the FBI investigation or resign.

- <u>Count V (Wrongful Discharge)</u>: Defendants caused Plaintiff's work environment to become so hostile and unpleasant that he was forced to resign.

---

[1]    Dennis Enomoto has since been substituted for Mr. Spierling after Mr. Spierling passed away.

- <u>Count VI (Infliction of Emotional Distress)</u>:
  Defendants intentionally inflicted emotional
  distress upon Plaintiff during the course of his
  work with the Liquor Commission

- <u>Count VII (Punitive Damages)</u>: Defendants' actions
  were wilful, wanton and malicious as to warrant an
  award of punitive damages.

## IV. <u>STANDARD OF REVIEW.</u>

Federal Rule of Civil Procedure 12(b)(6) provides that
a cause of action may be dismissed for "failure to state a claim
upon which relief can be granted."  A Rule 12(b)(6) motion is
properly granted when, even assuming all material facts in the
complaint are true, the plaintiff has failed to state a claim
upon which relief can be granted.  <u>American Family Ass'n v. City
and County of San Fran.</u>, 277 F.3d 1114, 1120 (9th Cir. 2002).

A party may obtain summary judgment where the record
shows that "there is no genuine issue of material fact and that
the moving party is entitled to summary judgment as a matter of
law."  Fed. R. Civ. P. 56(c).  A party moving for summary
judgment need not produce actual "evidence" negating the
existence of material factual issues, but may rest on the lack of
evidence of the essential elements of a claim.  <u>Celotex Corp. v.
Catrett</u>, 477 U.S. 317, 323 (1986).

Once a party moving for summary judgment has met its
burden of proving that there is no genuine issue of material
fact, the opposing party must "come forward with specific <u>facts</u>
evidencing" a need for trial.  Fed. R. Civ. P. 56(e).  A

plaintiff must adduce some "significant probative evidence tending to support the Complaint" and cannot discharge his burden by allegations in the pleadings, legal argument, or a hope that he can produce material evidence at the time of trial.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Arguments "based on mere speculation, conjecture or fantasy" are not sufficient to overcome a motion for summary judgment.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986).

V.    ARGUMENT.

    A.   As to the City & County of Honolulu, Honolulu Liquor Commission, and Dennis Enomoto, Count I of the Complaint must Be Dismissed as Plaintiff Has Not Alleged That His Constitutional Rights Were Violated Because of an Official City Policy or Custom, and There Is No Evidence of Such.

Municipalities, like CITY Defendants, are liable under 42 U.S.C. § 1983 only when "action pursuant to official policy of some nature cause[s] a constitutional tort."  Monell v. Department of Social Services of New York, 436 U.S. 658, 691 (1978).  Liability attaches only when the enforcement of a municipal policy or custom was the "moving force" of the violation of federally protected rights.  Wong v. City & County of Honolulu, 333 F.Supp.2d 942, 950-951 (D. Hawaii 2004).  An action or policy can be "official" if it executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.  Monell at 690.  Thus,

only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. Conversely, municipalities are not subject to section 1983 liability under a *respondeat superior* theory for the acts of their employees. Id. at 691.

The failure of an employee to allege and produce evidence that any retaliatory or discriminatory actions taken against him or her result from an official policy or custom is fatal to a section 1983 claim. See City of St. Louis v. Praprotnik, 485 U.S. 112, 128 (1988) (in employment retaliation action, city cannot be held liable where employee does not contend that anyone in city government ever promulgated, or even articulated, an unconstitutional municipal policy); Kaplan v. City of Arlington, 184 F.Supp.2d 553, 557-558 (N.D. Texas 2002) (city employee failed to establish section 1983 claim in wrongful termination action where she failed to plead facts showing existence of policy or custom that served as the moving force behind the alleged violation of her rights); McCoy v. City of New York, 131 F.Supp.2d 363, 378-379 (E.D. N.Y. 2001).

Here, the Plaintiff does not show, or even assert, that the actions allegedly taken against him were done pursuant to an official policy or custom of the CITY Defendants or that the

9

actions taken against him were by an official policy maker.
Accordingly, the Plaintiff's 42 U.S.C. § 1983 claims against CITY
Defendants should be dismissed as a matter of law.

    **B.**    **Wallace W. Weatherwax, John Carroll, Anna Hirai, and Allan Gaylord Are Entitled to Qualified Immunity on Plaintiff's 42 U.S.C § 1983 Claims.**

    Qualified immunity is a privilege granted to government
officials to protect them in the exercise of discretionary
functions.  The goal of qualified immunity is to "avoid excessive
disruption of government and permit the resolution of many
insubstantial claims on summary judgment."  <u>Saucier v. Katz</u>, 533
U.S. 194, 202, 150 L.Ed.2d 272, 121 S.Ct. 2151 (2001).  The
<u>Saucier</u> Court explained that:

> Qualified immunity is 'an entitlement not to stand
> trial or face the other burdens of litigation.'
> <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 86 L.Ed.2d
> 411, 105 S.Ct. 2806 (1985).  The privilege is 'an
> <u>immunity from suit</u> rather than a mere defense to
> liability; and like an absolute immunity, it is
> effectively lost if a case is erroneously
> permitted to go to trial.'  <u>Ibid</u>.

<u>Saucier</u> at 201, 121 S.Ct. at 2156 (emphasis in original).  The
reason behind qualified immunity is to:

> 'give[] ample room for mistaken judgments' by
> protecting 'all but the plainly incompetent or
> those who knowingly violate the law.' . . . This
> accommodation for reasonable error exists because
> 'officials should not err always on the side of
> caution' because they fear being sued.

<u>See</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 229, 112 S.Ct. 534, 537
(1991).

When ruling on the issue of qualified immunity, a Court must consider: "(1) Whether a plaintiff has identified a specific right that has been allegedly violated, (2) whether that right was so clearly established as to alert a reasonable official to its parameters, and (3) whether a reasonable official could have believed his or her conduct was lawful."  <u>Pahk v. State of Hawaii</u>, 109 F.Supp.2d at 1269 (D.Hawaii 2000)(<u>citing</u> <u>Sweaney v. Ada County, Idaho</u>, 119 F.3d 1385, 1388 (9th Cir. 1997)). Plaintiff has the burden of proving that the "right allegedly violated was clearly established at the time of the alleged misconduct." <u>Pahk</u>, 109 F.Supp.2d at 1269.

As the Supreme Court noted in <u>Saucier</u>, the qualified immunity defense must be considered in proper sequence:

> A court required to rule upon the qualified immunity issue, must consider this threshold question:  <u>Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.</u>
> * * *
> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; . . .

<u>Saucier</u> at 201, 121 S. Ct. at 2156 (Emphasis added).

11

To constitute a "clearly established" right, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Allen v. City and County of Honolulu</u>, 816 F.Supp. 1501, 1504 (D. Hawaii 1993) <u>citing</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S.Ct. 30304, 3039 (1987). To "clearly establish" a valid First Amendment claim of retaliation against a government employer, Plaintiff must establish:

> (1) that he engaged in protected speech; (2) that the employer took "adverse employment action;" and (3) that his speech was a "substantial or motivating factor for the adverse employment action.

<u>Coszalter v. City of Salem</u>, 320 F.3d 968, 975 (9th Cir. 2003).

Here, as discussed in detail below, Plaintiff cannot establish that his Grand Jury testimony was "constitutionally protected"; nor can he establish that it was a substantial or motivating factor in the alleged retaliation.

**1.   Count I Should Be Dismissed Because Plaintiff's Grand Jury Testimony Was Made Pursuant to His Official Duties as a Public Servant and Law Enforcement Official for the Honolulu Liquor Commission and Was Therefore Not Protected by the First Amendment.**

In order to establish that he engaged in "protected speech," Plaintiff must prove that he "spoke as a citizen on a matter of public concern." <u>Garcetti v. Ceballos</u>, 126 S.Ct. 1951, 1958 (2006).

12

Where the speech in question is a product of a government employee's job duty, the speech, even if concerning matters of public concern, is no longer afforded First Amendment protection.  <u>Garcetti</u>, 126 S.Ct. at 1959-1961.

In <u>Garcetti</u>, the plaintiff/respondent Ceballos, a deputy district attorney, filed a lawsuit against his former employer claiming retaliation based on, among other things, First Amendment grounds.  The basis for the claim stems from Ceballos' investigation into a pending criminal matter.

Following his investigation (basically finding inconsistencies in an affidavit), Ceballos drafted a memo to his superiors recommending that the criminal case be dismissed.  A meeting was held shortly thereafter to discuss the affidavit; in attendance was Ceballos, his supervisors, the sheriff in question, and other employees.  In spite of Ceballos' concerns, his supervisors decided to go forward with the prosecution, pending the outcome of a defense motion to challenge the warrant.  At the hearing on the motion, Ceballos was called by the defense as a witness and testified about his observations of the warrant.

Thereafter, Ceballos claimed that he was retaliated against by being reassigned from his calendar deputy position to a trial deputy position, transferred to another courthouse, and denied a promotion.  He claimed the retaliation was based on his memos that were submitted to his superiors.

13

On appeal before the United States Supreme Court, the Court reversed the Ninth Circuit Court of Appeals' decision, and ruled in favor of the employer. In making its decision, the Court recognized that when an employee's speech is made pursuant to his/her official duties, an employer may, without violating the employee's First Amendment right, discipline the employee for his employment-related speech. As explained by the U.S. Supreme Court:

> The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy. That consideration – the fact that Ceballos spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case – distinguishes Ceballos' case from those in which the First Amendment provides protection against discipline. We hold that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.
>
>     \*        \*        \*        \*
>
> The significant point is that the memo was written pursuant to Ceballos' official duties. Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.
>
> Id., 126 S.Ct. at 1959-1960.

In the wake of this decision, the Court in Deprado v. City of Miami, 446 F.Supp.2d 1344 (S.D.Fla. 2006), ruled that a

law enforcement officer's testimony at a grand jury hearing was
not protected by the First Amendment.

The plaintiff, a police officer with the City of Miami
Police Department, filed a lawsuit against the City of Miami,
among other defendants, alleging that he was unlawfully
retaliated against for testifying before a grand jury concerning
police misconduct.

Relying upon the Garcetti decision, the court ruled
that the plaintiff could not establish that he engaged in
protected speech because his testimony was given pursuant to his
official duties:

> In accordance with the police department's regulations,
> and the Plaintiff's obligations as a State-certified
> law enforcement officer, Plaintiff's subpoenaed grand-
> jury testimony occurred pursuant to his official duties
> as a police officer for the City of Miami Police
> Department, as was not speech as a private citizen.
> Accordingly, Plaintiff cannot meet the first prong for
> a First Amendment claim.

Deprado, 446 F.Supp.2d at 1236-47.

Here, and under similar facts as the Deprado decision,
Plaintiff claims his First Amendment rights were violated when he
was allegedly retaliated against after testifying at a grand jury
proceeding regarding alleged corruption within the Liquor
Commission.  Plaintiff, much like the Deprado plaintiff, was a
law enforcement officer[2] required by law and under penalty of

---

[2]    Plaintiff Kerry Shannon, as an investigator with the
Liquor Commission, was a law enforcement officer with the same

termination to appear and testify at Court. See HRS § 78-9. By testifying before the Grand Jury regarding alleged corruption within the Liquor Commission, Plaintiff was acting pursuant to his official duties as a law enforcement officer and public servant. Therefore, Plaintiff's Grand Jury testimony cannot be considered "protected speech." It is significant to note that Plaintiff applied for overtime pay with the Liquor Commission because of his participation with the FBI and HPD investigation, which provides further evidence that his participation in the investigative process was part of his job duties. See **"B,"** Kerry Shannon Deposition Transcript (Vol. II), dated May 23, 2006 ("Shannon Depo Vol. II") at pg. 52, line 2 - pg.54, line 18.

Based on the foregoing, Employee Defendants are entitled to qualified immunity on Plaintiff's 42 U.S.C. § 1983 cause of action.

**2.    There Is No Evidence That Any Alleged Retaliation or Adverse Employment Action Was Taken Against Plaintiff for His Participation in the Federal Bureau of Investigation's and Honolulu Police Department's Investigations into Alleged Corruption at the Honolulu Liquor Commission, Including Testifying Before the Grand Jury.**

Assuming, *arguendo*, that Plaintiff engaged in protected speech, which Defendants deny, he still cannot establish that: (1) adverse employment action was taken against him by

---

powers as a police officer. See HRS § 281-17(a)(5).

Defendants; and (2) that his Grand Jury Testimony was a
substantial or motivating factor of the alleged adverse
employment action.

     In order to establish "adverse employment action,"
Plaintiff must prove that the actions taken by Defendants were
"reasonably likely to deter them from engaging in protected
activity under the First Amendment." Coszalter, 320 F.3d at 975.
The Coszalter court considered the following acts, individually,
to be adverse employment action: (1) Unwarranted disciplinary
investigation; (2) An unwarranted assignment of blame; (3) A
reprimand containing a false accusation; (4) A criminal
investigation; (5) Repeated and ongoing verbal harassment; (6)
The circulation of a petition at the encouragement of management;
(7) A ten-day suspension from work; (8) A threat of disciplinary
action; (9) An unpleasant work assignment; (10) A withholding of
a customary public recognition; (11) An unwarranted disciplinary
action; and (12) Two consecutive 90-day 'special' reviews of work
quality. Id., 320 F.3d at 976-77.

     The court recognized, however, that "when an employer's
response includes minor acts, such as 'bad-mouthing,' that cannot
reasonably be expected to deter protected speech and do not
violate an employer's First Amendment Rights." Id. at pg. 976
(citing Nunez v. City of Los Angeles, 147 F.3d 867 (9th Cir.
1998)).

17

In <u>Nunez</u>, the 9th Circuit ruled that "mere threats and harsh words are insufficient" to establish a retaliation claim under the First Amendment. <u>Id.</u>, 147, F.3d at 876. The <u>Nunez</u> Court also commented that "<u>[i]t would be the height of irony, indeed if mere speech, in response to speech, could constitute a First Amendment violation.</u>" <u>Id.</u>(emphasis added).

In order to establish that Plaintiff's Grand Jury testimony was a substantial and motivating factor behind the alleged "adverse employment action," Plaintiff must do more than establish that Defendants knew of Plaintiff's Grand Jury testimony, but must also: (1) establish proximity in time between the Plaintiff's Grand Jury testimony and the alleged retaliatory actions; (2) produce evidence that the Defendants expressed opposition to Plaintiff's Grand Jury testimony, either to Plaintiff, or others; or (3) demonstrate that the Defendants' proffered explanations for their adverse actions were false and pretextual. <u>Alpha Energy Savers, Inc. V. Hansen</u>, 381 F.3d 917, 929 (9th Cir. 2004).

Here, Plaintiff has alleged numerous "adverse employment actions," many of which constitute "minor acts." Further, the remaining allegations have no causal relationship to Plaintiff's Grand Jury testimony (<u>See</u> <u>Alpha Energy Savers</u>, <u>supra</u>), and have no factual or evidentiary basis. The following

are Plaintiff's allegations of retaliation and Defendants'

response thereto:

| Allegation | Response |
|---|---|
| **Defendants informed Plaintiff's fellow investigators of the Plaintiff's grand jury testimony "for the express purpose of bringing pressure to bear on Plaintiff to cease cooperating with said investigation"** | There is no evidence that Defendants informed other investigators of Plaintiff's grand jury testimony.  In Plaintiff's deposition, when asked the basis of this statement, Plaintiff testified that "[t]hey were the only ones that were at the meeting and they were the only ones that see the other investigators, because they work at night."  See **Exhibit "C,"** Plaintiff Kerry Shannon's Deposition Transcript (Vol. I), dated May 22, 2006 ("Shannon Depo Vol. I") at pg. 82, lines 12 - 19.  When asked if there were any other reasons, he said, "no."  Id.  This allegation is pure speculation; and, even if true, cannot be seen to constitute an "adverse employment action" because it is not likely to deter Plaintiff from engaging in protected speech. |

| Allegation | Response |
|---|---|
| One or more of the Employee Defendants delayed the processing of Plaintiff's workers' compensation claim without cause or explanation. | There is no evidence that anyone but Allan Gaylord was involved with these events. Id. at pg. 90, lines 3 - 25. Regardless, there is no evidence that it was in retaliation for his Grand Jury testimony; rather, the only evidence is that Allan Gaylord investigated the incident because he didn't think Plaintiff could have injured himself because the female was smaller than Plaintiff was. Id. This is not the type of incident reasonably likely to deter others from engaging in protected activity under the First Amendment and cannot be seen to be motivated by the Grand Jury testimony. |
| The Employee Defendants forced Plaintiff to resign from employment (i.e., they "constructively discharged" him). | Plaintiff took medical retirement because his pre-existing neck injury and headaches which were getting worse from the computer work. Id. at pg. 105, lines, 20 - 25. Although he claimed work-related stress, the documentation submitted by Dr. Rasmussen supporting his medical retirement was based solely on his pre-existing physical injuries. See Shannon Depo Vol. II at pg. 30, line 19 - pg. 33, line 14. |
| Plaintiff was asked by the Employee Defendants to disclose what had occurred at the Grand Jury Proceedings. When Plaintiff refused, the Employee Defendants were visibly displeased. | "Visual displeasure" cannot be seen as a retaliatory act that would reasonably prevent someone from expressing his/her First Amendment Rights. |

20

| Allegation | Response |
|---|---|
| In April 2002, Plaintiff was physically and verbally threatened by Allan Gaylord to remove the name of a liquor commission investigator from a report regarding the Little Seoul hostess bar. | Plaintiff was asked to remove a comment he made about a fellow investigator from his violation report and was told to place that information in another report detailing the fellow investigator's alleged involvement. See Shannon Depo Vol. II at pg. 38, line 22 - pg. 48, line 10. Plaintiff complied with this request. Id. This event is in no way connected to or motivated by Plaintiff's Grand Jury testimony. Furthermore, threats are not considered "adverse employment actions." See Nunez. |
| In early March 2002, Employee Defendants warned Plaintiff, Arthur Andres, and Kenneth Wright that they would end up like Charles Wiggins if they did not maintain their loyalty to the Liquor Commission. | Plaintiff testified that: "There were other occasions where Allan Gaylord would tell me or just make comments out in general to the squad room about people that cooperated could end up like either Wiggins or Collazo." See Shannon Depo Vol. II at pg. 94, line 20 - pg. 95, line 1. Threats and bad-mouthing are not the type of activity considered to be "adverse employment actions." See Nunez. To the extent that Plaintiff only implicates Allan Gaylord, it cannot be used against the remaining Defendants. |

| Allegation | Response |
|---|---|
| In a July 2002 meeting, Defendant Weatherwax reprimanded Plaintiff for making derogatory comments about commissioners regarding the Happy Days Chinese Restaurant. | Plaintiff admitted that he was <u>verbally counseled</u> after this incident and that <u>no disciplinary action was taken against him</u>. <u>See</u> Shannon Depo Vol. I at pg. 63, line 20 - pg. 64, line 16. He also admitted to making comments that liquor commissioners Spierling and Kwock were going to make sure that a restaurant would not be cited for serving alcohol without a license because it happened before. <u>Id.</u> This event is in no way connected to the Grand Jury testimony and cannot be seen to have been motivated by Plaintiff's Grand Jury testimony. |
| The attitude of the Employee Defendants towards Plaintiff changed in February 2002 since they became aware of his cooperation with the investigation. | Changes in attitude, without action, cannot support a claim of retaliation. Rather, this is a minor act, if an act at all. |
| Plaintiff's computer being turned off when he was not present, causing him to lose data, items moved on his desk, and people opening his e-mails. | Plaintiff alleges that this occurred sometime in 2003, which would be ten (10) months after his grand jury testimony. <u>See</u> Shannon Depo Vol. I at pg. 93, lines 1 - 14. Moreover, when asked "do you know who did it," Plaintiff responded "no." <u>Id.</u> at pg. 94, lines 13 - 14. This claim is speculative and cannot support a claim of retaliation/harassment. |
| His protective body armor was stolen. | Plaintiff has no evidence that any of the Defendants stole the body armor. |

22

| Allegation | Response |
|---|---|
| **Bad mouthing by Employee Defendants, primarily Allan Gaylord and John Carroll.** | These are minor acts that do not constitute adverse employment action.  See Nunez. |
| **Bad assignments to out of the way places which were dangerous, such as Kuhio Park Terrace and Mayor Wright Housing.** | Plaintiff testified that in early January/February 2002, he started to carry a firearm because he was sent to neighborhoods "that being a Caucasian was not a good place to go serve subpoenas." See Shannon Depo Vol. I at pg. 141, line 19 - pg. 142, line 25.  He admitted that someone from his office had to do the job, but he felt that a Caucasian shouldn't be the one to do it.  See Shannon Depo Vol. II, pg. 99, line 19 - pg. 102, line 22.  He believed that Ken Wright, who is 6'5", 400 lbs should have done it or Arthur Andres because he is Filipino.  Id.  Based on Plaintiff's deposition testimony, it is clear that he was performing these functions prior to his Grand Jury testimony and it therefore the assignment cannot be seen to substantial or motivated by his participation thereof. |

| Allegation | Response |
|---|---|
| **Allan Gaylord voiced veiled threats to Plaintiff about Charles Wiggins and Warren Collazo.  John Carroll and Wallace Weatherwax reinforced these threats by asking Gaylord whether Collazo had been killed.** | Plaintiff testified that: "There were other occasions where Allan Gaylord would tell me or just make comments out in general to the squad room about people that cooperated could end up like either Wiggins or Collazo." <u>See</u> Shannon Depo Vol. II at pg. 94, line 20 - pg. 95, line 1.  Threats and bad-mouthing are not the type of activity considered to be "adverse employment actions." <u>See</u> <u>Nunez</u>. To the extent that Plaintiff only implicates Allan Gaylord, it cannot be used against the remaining Defendants. |
| **Was receiving the "cold shoulder" from his fellow inspectors starting in February 2002.** | This allegation does not implicate the named Defendants and cannot form the basis of retaliation.  Further, Plaintiff admitted that he didn't tell Defendants or other supervisors about this but that they should have been aware of it and held meetings about it.  <u>See</u> Shannon Depo Vol. II at pg. 104, line 2 - pg. 105, line 17.  Moreover, receiving the "cold shoulder" is not the type of adverse employment action that is reasonably likely to deter protected speech.  <u>See</u> <u>Huskey v. City of San Jose</u>, 204 F.3d 893 (9th Cir. 2000)(Court noted that receiving the cold shoulder by colleagues were not intolerable or discriminatory actions). |

| Allegation | Response |
|---|---|
| He was reassigned to licensing in July 2002, but was forced to keep his desk located in the enforcement section. | Plaintiff admitted that although there was an open space for him in the licensing division, there was no desk in that space. See Shannon Depo Vol. II at pg. 105, line 21 - pg. 106, line 20. When he asked whether he could move his desk to the open space, he was told by Robert Durick that he could not because they were going to do construction in that area; this was later confirmed by Daniel Arakaki the administrative officer. Id. This was not a decision made by any of the Defendants and cannot be seen to have been motivated by his Grand Jury testimony. There is also a non-retaliatory explanation why Plaintiff was not able to move his desk to that empty area (i.e., construction). |
| Four anonymous phone calls threatening his life. | Plaintiff has admitted that he does not know who called his home. See Shannon Depo Vol I. at pg. 97, line 15 - pg. 98, line 13. In fact, some of the calls were made after he resigned. Id. at pg. 98, line 17 - pg. 99, line 5. Plaintiff also admits that he has no actual proof that Defendants committed this act. See Shannon Depo Vol. II at pg. 79, line 22 - pg. 80, line 7. |

| Allegation | Response |
| --- | --- |
| **There was a dead rat found on his car.** | Plaintiff admits that he has no actual proof that Defendants committed this act.  <u>See</u> Shannon Depo Vol. II at pg. 79, line 22 - pg. 80, line 7.  Plaintiff had the building manager review the video tapes of the garage where he parked his car, but the tapes didn't show anyone.  <u>Id.</u> at pg. 107, line 8 - pg. 108, line 13. |
| **Plaintiff's car was stolen at the very end of January or beginning of February 2002** | Plaintiff's son Robert Shannon testified at deposition that Plaintiff's vehicle was stolen in either December 2001 or January 2002, which would have been before Plaintiff testified before the Grand Jury.  <u>**See Exhibit "D,"**</u> Deposition of Robert Shannon, dated May 22, 2006, at pg. 15, line 24 - pg. 16, line 3. |

| Allegation | Response |
|---|---|
| **Plaintiff was assigned to the licensing division which caused him to work with computers which led him to aggravate a pre-existing neck injury.** | Plaintiff was transferred from enforcement to licensing in July 2002 as a temporary promotion. <u>See</u> Shannon Depo at Vol. I at pg. 65, line 4 – pg. 66, line 7.  It was also "voluntary" and Plaintiff agreed to the transfer.  <u>Id.</u> at pg. 66, lines 10 – 15.  The promotion meant that Plaintiff was to be paid $500 more a month.  <u>Id.</u> at pg. 67, lines 3 – 6.  He later requested and was granted a transfer back to enforcement in October 2002.  <u>Id.</u> at pg. 67, lines 20 – 23; pg. 68, lines 19 – 22.  He was granted the transfer, but after one week requested, and was granted yet another transfer back to licensing.  <u>Id.</u> at pg. 8 – 21. <u>See also</u> Shannon Depo Vol II at pg. 33, line 15 – pg. 34, line 3.  There clearly was no adverse employment action taken as the transfer was voluntary, he was paid more, and when he wanted to transfer to and from the divisions, he was granted the transfers. |
| **He was informed that others were making fun of him.** | This is hearsay evidence and has no apparent relation to his Grand Jury testimony.  Moreover, "making fun" is a minor act that would not deter Plaintiff from expressing his First Amendment Rights. |

| Allegation | Response |
|---|---|
| **Attempts to have Employee Defendants to do something about the harassment were ignored.** | Plaintiff admits that he never brought his claims of harassment to the attention of the Employee Defendants. In fact, in a meeting with corporation counsel and Anna Hirai involving the Wiggins lawsuit, Plaintiff never indicated that he was subject to hostility or harassment. <u>See</u> Shannon Depo Vol. II at pg. 57, line 9 - 23. He didn't do so because he felt threatened by Anna Hirai's presence. <u>Id.</u> In fact, in that interview, Plaintiff said that Wiggins was suing to get money, but later testified that he did so because Allan Gaylord instructed him to say that. <u>Id.</u> at pg. 58, lines 10 - 21. |
| **A number of notices that he issued to Rainbow Country Liquors had either disappeared or were simply not prosecuted, which led him and another officer to be sued by Rainbow Country Liquors.** | This allegation is baseless. The Rainbow Country lawsuit was filed on June 9, 2000, long before the Grand Jury testimony. **See Exhibit "E."** Clearly, this matter cannot be even remotely related to the Grand Jury testimony. |

Based on the foregoing, Plaintiff cannot establish that his Grand Jury Testimony was a substantial or motivating factor of the alleged adverse employment action. Therefore, and on this additional basis, the Employee Defendants are entitled to qualified immunity on Plaintiff's 42 U.S.C. § 1983 cause of action.

C.    **Plaintiff's 42 U.S.C. § 1983 Claim must Be Dismissed Or, in the Alternative, That Summary Judgment Be Entered in Defendants' Favor.**

In addition to the arguments presented in Section "A" and "B," dismissal and/or summary judgment is appropriate because Plaintiff did not engage in "protected speech." As discussed in Section "B," Plaintiff's testimony before the Grand Jury was part of his official duties as a law enforcement officer and public servant, and therefore, was not "protected speech." Based on the arguments set forth in Sections "A" and "B", Defendants submit that Plaintiff's 42 U.S.C. § 1983 claim (Count I) must be dismissed and/or that summary judgment enter in Defendants' favor.

D.    **Defendants are Entitled to Qualified Immunity for all State Tort Claims.**

Under Hawai'i State law, local government officials are entitled to qualified immunity from state tort claims:

> [N]on-judicial governmental officials, when acting in the performance of their public duty, enjoy the protection of what has been termed a qualified or conditional privilege. This privilege effectively shields the official from liability, and not from the imposition of the suit itself, to the extent that the privilege is not abused and thereby lost. . . . [I]n order for an action to lie against an official acting under a claim of privilege, it is essential that the injured party allege and prove, to the requisite degree, that the official had been motivated by malice and not by an otherwise proper purpose.

Towse v. State of Hawaii, 64 Haw. 624, 631-32, 647 P.2d 696, 702 (1982); Wong v. City and County of Honolulu, 333 F.Supp.2d 942

(D.Hawaii 2004); <u>Pahk v. State of Hawaii</u>, 109 F.Supp.2d 1262 (D.Hawaii 2000).  The requisite degree of proof is "clear and convincing proof."  <u>Medeiros v. Kondo</u>, 55 Haw. 499, 504=505, 522 P.2d 1269, 1272 (1974).

Although the "issue of the existence of malice is generally for the jury's determination, 'when this issue has been removed from the case by uncontroverted affidavits and depositions, and the moving party is entitled to judgment as a matter of law, summary judgment will be granted." <u>Towse</u>, 64 Haw. at 633, 647 P.2d at 703 (citing <u>Runnels v. Okamoto</u>, 56 Haw. 1, 525 P.2d 1125 (1974)).

Here, there is no evidence, let alone clear and convincing evidence, that each Employee Defendant acted with malice.  As such, Employee Defendants are entitled to qualified immunity on all State law torts, and that Counts II - VII be dismissed and/or that summary judgment enter in Employee Defendants' favor.

In addition to the qualified immunity afforded Employee Defendants, Employee Defendants are also entitled to a dismissal of and/or summary judgment on Plaintiff's State law causes of action on the bases and arguments provided below.

**E.  Count II Should Be Dismissed as to All Defendants Because There Is No Evidence That Plaintiff Was Ever Retaliated Against by Any Defendants with Regard to His Compensation, Terms, Conditions, Location, or Privileges of Employment as Required by § 378-62, Hawaii Revised Statutes.**

Hawaii's whistleblower statute (H.R.S. § 378-62) provides that:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

(A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or

(B) A contract executed by the State, a political subdivision of the State, or the United States,

unless the employee knows that the report is false; or

(2) An employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action

Here, there is no evidence that Plaintiff was ever retaliated or discriminated against by any of the Defendants with regard to his compensation, terms, conditions, location, or privileges of employment. To the contrary, the only evidence was that Plaintiff was <u>not</u> disciplined but was actually promoted, received a pay raise, was transferred to and from the Enforcement

31

Division to the Licensing Division upon request, and that he voluntarily resigned/retired for unrelated medical reasons.

At his deposition, when asked if he had even been fired, suspended, or otherwise disciplined during his employment with the liquor commission, Plaintiff answered that he was verbally counseled in July 2002 for making disparaging marks about the commissioners. See Shannon Depo Vol. 1 at pg. 63, line 16 - pg. 64, line 20. In that instance, though, he admits making those statements. Id. Other than that one instance of verbal counseling, no disciplinary action was ever taken against Plaintiff. Id. at pg. 64, lines 21 - 23.

Furthermore, Plaintiff was never terminated from his position. He initially filed paperwork for medical retirement in November 2002, but when there was some delay in the paperwork, he opted to voluntarily retire.[3] His application for medical retirement was approved shortly thereafter, in March 2003, after

---

[3]    The medical retirement was based on the amount of headaches he was getting from all the computer work that he was doing, in addition to the stress and anxiety. Id. at pg. Pg. 105, lines 20 - 24. When asked whether any of his physicians prescribed more medication for the stress he alleged to have been under at work, Plaintiff testified that the dosages were increased because of the increased neck pain and migraine headaches attributable to increased computer work. Id. at pg. 114, line 22 - pg. 115, line 10. Plaintiff, however, agreed that he had these pains since 1994. Id. at pg. 115, line 24 - pg. 116, line 3. Significantly, the documentation submitted by Dr. Rasmussen supporting his medical retirement was based solely on his pre-existing physical injuries. See Shannon Depo Vol. II at pg. 30, line 19 - pg. 33, line 14.

Plaintiff submitted additional medical documentation.  Id. at 103, line 22 - pg. 105, line, line 16.

Based on Plaintiff's own deposition testimony, his claim for violation of HRS § 378-62 must be dismissed and/or summary judgment be entered in Defendants' favor.

    **F.    Plaintiff's Negligent Supervision Claim (Count III) must Be Dismissed for Two (2) Reasons: (1) to the Extent That it Is Alleged Against His Employer, the Claim Is Barred by the Workers' Compensation Exclusivity Statute, and (2) to the Extent That the Complaint Alleges Liability Against the Employees of the Honolulu Liquor Commission for Their Actions Within the Scope of Their Employment, it must Be Dismissed as a Negligent Supervision Claim must Be Premised on Actions Outside the Scope of Their Employment.**

Plaintiff's negligent supervision claim is a negligence claim arising from the employment relationship and is therefore barred by the workers' compensation exclusivity statute, H.R.S. § 386-5.  Kahale v. ADT Automotive Services, Inc., 2 F.Supp.2d 1295 (D. Hawaii 1998).  See also Black v. City & County of Honolulu, 112 F.Supp.2d 1041, 1048 (D. Hawaii 2000) (only negligence claims premised on sexual harassment discrimination are exempt from the bar of Hawaii's workers' compensation statute); Furukawa v. Honolulu Zoological Society, 85 Hawaii 7, 18, 936 P.2d 643 (1997) (the workers' compensation law prohibits civil actions for damages resulting from "accidental" conduct).  Therefore, as a matter of law, the claim must be dismissed as to the CITY Defendants.

To the extent that Plaintiff's negligent supervision claim is alleged against the individual Employee Defendants, the claim must be dismissed because Plaintiff alleged that Employee Defendants were at all times acting <u>*within* the course and scope of their employment</u>.  As the Hawaii Supreme Court ruled in <u>Dairy Road Partners v. Island Insurance Co., Ltd.</u>, a claim of negligent supervision applies only if the defendants were acting <u>*outside* the course and scope of their employment</u>:

> The standards for this theory may be found in Restatement (Second) of Torts § 317 (1995):
>
> § 317.  Duty of Master to Control Conduct of Servant. A master is under a duty to exercise reasonable care so to control his servant *while acting outside the scope of his employment* as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) The servant
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> (ii) is using a chattel of the master, and
> (b) the master
> (i) knows or has reason to know that he has the ability to control his servant, and
> (ii) knows or should know of the necessity and opportunity for exercising such control.
>
> *Id*. at 444, 879 P.2d at 549 (emphasis added).

> \*          \*          \*          \*

> In the present matter, however, the plaintiffs in the underlying lawsuit have failed to state a claim for negligent supervision.   Both complaints assert that, at all times material, Nakamura was acting *within* the scope of his employment.   <u>Inasmuch as negligent supervision may only be found where an employee is acting *outside* of the scope of his or her employment,</u>

<u>the complaints in the underlying lawsuit cannot be said
to state a claim for negligent supervision</u>.
Accordingly, DRP cannot be found liable for negligently
supervising Nakamura.    .

<u>Dairy Road Partners</u>, 92 Hawai`i 398, 426-427, 992 P.2d 93, 121-
122 (2000)(Italics in original)(Underlined emphasis added).

Because there are no allegations that the Employee
Defendants were acting <u>outside</u> the course and scope of their
employment, Plaintiff cannot prevail on this claim.

Based on the foregoing, Plaintiff's claim for negligent
supervision must be dismissed and/or in the alternative, summary
judgment be entered in Defendants' favor.

### G.    Count IV Should Be Dismissed as There Is No Evidence Of Any Conspiracy to Retaliate Against Plaintiff.

In order to establish a claim for civil conspiracy, the
Plaintiff must prove that two or more persons had an agreement to
take unlawful action against the Plaintiff, that they committed
an overt unlawful act in furtherance of the conspiracy, and that
he suffered injury as a result of the overt act.   <u>Thompson
Trading Ltd. v. Allied Breweries Overseas Trading Ltd.</u>, 748 F.
Supp. 936 (D. R.I. 1990).   Thus, in addition to proving the
elements of an unlawful retaliation claim, the Plaintiff must
also prove that the Defendants had an agreement to unlawfully
retaliate against the Plaintiff and did so.

Here, there is no evidence that Plaintiff was unlawfully retaliated against; nor is there evidence that the Employee Defendants conspired to do so.

Based on the foregoing, Plaintiff's civil conspiracy claim (Count IV), must be dismissed, or summary judgment enter in Defendants' favor.

**H.  Plaintiff's Wrongful Discharge Claim (Count V) Should Be Dismissed Because the Claim Is Embodied in Count I and Count II of the Complaint.**

The Plaintiff's claim for wrongful discharge is merely derivative of his claims of unlawful retaliation (i.e., § 1983 and HRS § 378-62) and cannot be alleged as a separate and distinct cause of action.

Under Hawaii law, a claim of wrongful discharge in violation of a public policy that is embodied in another statute that provides adequate remedies cannot be maintained as a separate cause of action.  See Ross v. Stouffer Hotel Company (Hawaii) Ltd., 76 Hawai`I 454, 879 P.2d 1037 (1994); Batacan v. Reliant Pharmaceuticals, 324 F.Supp.2d 1144 (D.Hawaii 2004); Takaki v. Allied Machinery Corp., 87 Hawai`i 57, 951 P.2d 507 (Haw.App. 1998).  Here, the Plaintiff already has potential remedies for "wrongful discharge" under the whistleblower statute and thus cannot maintain a separate "wrongful discharge" cause of action.  Therefore, the wrongful discharge claim (Count V) must be dismissed and/or summary judgment enter in Defendants' favor.

I.    **Count VI, Which Is a Claim of Intentional Infliction of Emotional Distress, Should Be Dismissed Because There Is No Evidence That Defendants Were Responsible for Any of the Allegations Including the Death Threats and Other Anonymous Activity Alleged by Plaintiffs, and Whatever Defendants Were Alleged to Have Done, Would Not Have and Did Not Cause Plaintiff Severe Emotional Distress.**

In order to prevail on a claim of intentional

infliction of emotional distress, the Plaintiff must show that:

> One who by *extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another* is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> *Restatement, supra,* § 46, at 71-72 (emphasis added). Under the second Restatement, the likelihood of illness is no longer a necessary element of the tort. Rather, severe emotional distress is the prohibited result. Severe emotional distress is defined as "mental suffering, mental anguish, mental or nervous shock [and] ... includ[ing] all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." *Restatement, supra,* § 46 at 77-78. "The intensity and the duration of the distress are factors to considered in determining its severity." *Restatement, supra,* § 46 at 77-78.

See Hac v. University of Hawaii, 102 Hawaii 92, 105-106, 73 P.3d

46, 59-60 (2003)(Emphasis added).

Here, the only evidence of Plaintiff's severe emotional

distress is Plaintiff's fear for his safety after he testified

before the Grand Jury. However, there is no evidence and

Plaintiff has no proof that any of the Defendants made any

threats on his life; for instance, there is no evidence that

Defendants made the alleged threatening phone call(s) to Plaintiff's home, stole Plaintiff's vehicle and left a bullet on the seat (which Plaintiff admits may have been before he participated in the investigation), and placing a dead rat on his vehicle. <u>See</u> Shannon Depo Vol. II at pgs 79-80.  Further, even if the remaining allegations of harassment are true (i.e., turning off Plaintiff's computer, bad mouthing, etc.), which Defendants deny, such actions cannot be said to have been "outrageous" or "extreme" conduct that could result in severe emotional distress.

For the foregoing reasons, Plaintiff's Infliction of Emotional Distress claim (Count VI) must be dismissed and/or that summary judgment be entered in Defendants' favor.

**J.    Count VII must Be Dismissed as the City and County of Honolulu and the Honolulu Liquor Commission (Including Dennis Enomoto) Because Punitive Damages Cannot Be Awarded Against a Municipality.**

Plaintiff's claims against the CITY Defendants for punitive damages must fail in light of <u>Lauer v. Young Men's Christian Association of Honolulu</u>, 57 Haw. 390, 557 P.2d 1334 (1976).  In <u>Lauer</u>, the Hawaii Supreme Court held that the City & County of Honolulu, a municipal corporation, cannot be held liable for punitive damages based upon public policy.  The <u>Lauer</u> court reasoned that because the "deterrent or retributive effect of punitive damages must be placed squarely on the shoulders of the wrongdoer," the municipality comprised of "innocent taxpayers

38

. . . should not be made to suffer." 57 Haw. at 402. <u>See also</u>

<u>Daly v. Harris</u>, 215 F.Supp.2d 1098, 1124 (D. Hawaii 2002) (citing

<u>Lauer</u> with approval). <u>Lauer</u> remains controlling on this issue

and is dispositive of the Plaintiff's claims for punitive damages

against the CITY Defendants. Accordingly, all claims for

punitive damages against the CITY Defendants should be dismissed

as a matter of law.

> **K.  There Is No Evidence of Retaliation and
> Therefore Punitive Damages Are Unwarranted
> Against Wallace Weatherwax, Anna Hirai,
> <u>John Carroll, and Allan Gaylord.</u>**

Punitive damages may be awarded only in cases where the

wrongdoer has acted wantonly or oppressively or with such malice

as implies a spirit of mischief or criminal indifference to civil

obligations; or where there has been some wilful misconduct or

that entire want of care which would raise the presumption of a

conscious indifference to consequences. <u>Masaki v. General Motors

Corp.</u>, 71 Haw. 1, 13, 780 P.2d 566 (1989) (quoting <u>Kang v.

Harrington</u>, 59 Haw. 652, 660-61, 587 P.2d 285 (1978)). It is

clear that "something more" than mere commission of a tort is

<u>always</u> required to justify the imposition of punitive damages.

See <u>Masaki</u>, 59 Haw. at 7 (emphasis added) (holding that a

positive element of conscious wrongdoing is <u>always</u> required).

"Punitive damages are not awarded for mere inadvertence, mistake,

or errors of judgment." <u>Id.</u> Furthermore, a plaintiff must prove

that an award of punitive damages is justified by <u>clear and
convincing</u> evidence.  <u>See</u> <u>Masaki</u>, 71 Haw. at 16 (emphasis added).

However, it is generally recognized that a punitive
damage claim is not a separate "stand-alone" claim, but is
instead dependant on the success of an underlying claim for
compensatory damages.  <u>See</u> <u>Ross v. Stouffer Hotel Company
(Hawaii) Ltd.</u>, 76 Hawai`i 454, 466, 879 P.2d 1037, 1049 (1994)'
<u>see also</u> 22 Am.Jur.2d <u>Damages</u> § 551 ("Punitive damages are a
derivative sort of damages awarded as a mere incident of the
cause of action in which they are sought"); 25 C.J.S. <u>Damages</u> §
195 ("[A] demand or request for punitive damages is parasitic and
possesses no viability absent its attachment to a substantive
cause of action").

In this case, there is no evidence that the Employee
Defendants retaliated against Plaintiff; thus there is no basis
upon which to impose punitive damages.  Furthermore, to the
extent that Defendants are entitled to qualified immunity,
punitive damages cannot be awarded.

Therefore, an award of punitive damages are unwarranted
under the facts of this case and the claim must be dismissed
and/or that summary judgment be entered in Defendants' favor.

**VI.    CONCLUSION.**

For the foregoing reasons, Defendants CITY AND COUNTY
OF HONOLULU, HONOLULU LIQUOR COMMISSION, DENNIS ENOMOTO, WALLACE

W. WEATHERWAX, ANNA HIRAI, and ALLAN GAYLORD's Motion to Dismiss

or in the Alternative for Summary Judgment should be granted on

all claims alleged in Plaintiffs' Complaint.

        DATED:   Honolulu, Hawaii, <u>December 20, 2006</u>.

                                      _____

                                  JAMES KAWASHIMA
                                  RANDALL Y. YAMAMOTO
                                  CARTER K. SIU
                                  Attorneys for Defendants
                                  City and County of Honolulu,
                                  Honolulu Liquor Commission,
                                  Dennis Enomoto, Wallace W.
                                  Weatherwax, John Carroll,
                                  Anna Hirai, and Allan Gaylord

41