**DENNIS W. POTTS**  (1121-0)
ATTORNEY AT LAW
A LAW CORPORATION
1001 Bishop Street
2755 Pacific Tower
Honolulu, Hawaii 96813
Telephone No. (808) 537-4575

Attorney for Plaintiff
**KERRY SHANNON**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KERRY SHANNON,<br><br>    Plaintiff,<br>vs.<br><br>CITY AND COUNTY OF HONOLULU; HONOLULU LIQUOR COMMISSION; JOHN SPIERLING; in his official capacity as chairman of the Honolulu Liquor Commission; WALLACE W. WEATHERWAX, individually and in his capacity as an agent and employee of the Honolulu Liquor Commission; JOHN CARROLL, individually and in his capacity as an employee of the Honolulu Liquor Commission; ANNA HIRAI, individually and in her capacity as an employee of the Honolulu Liquor Commission; ALLAN GAYLORD, individually and in his capacity as an employee of the Honolulu Liquor | **CIVIL NO. CV04-00086 SPK/LEK**<br><br>PLAINTIFF'S RESPONSE TO DEFENDANT CITY AND COUNTY OF HONOLULU'S FIRST REQUEST FOR ANSWERS TO INTERROGATORIES TO PLAINTIFF KERRY SHANNON |

EXHIBIT "A"

| | |
|---|---|
| Commission; JOHN DOES 1-10, JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE GOVERNMENTAL AGENCIES 1-10,<br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

(C:\SHANNON\RESPRAINS-COVER)

## PLAINTIFF'S RESPONSE TO DEFENDANT CITY AND COUNTY OF HONOLULU'S FIRST REQUEST FOR ANSWERS TO INTERROGATORIES TO PLAINTIFF KERRY SHANNON

Plaintiff, by and through his attorney above-named, answers Defendant City and County of Honolulu's First Request for Answers to Interrogatories as follows:

## **INTERROGATORIES TO PLAINTIFF KERRY SHANNON**

1. List the names and addresses of all witnesses for any of the incidents or events alleged in your Complaint which was filed in this matter, and provide a brief description of the facts to which each witness may testify.

    ANSWER: See Plaintiff's Initial Disclosures filed herein on July 7, 2004 and Plaintiff's Supplemental Disclosures filed herein on July 14, 2004 and September 1, 2004. Those witnesses who were employed by the Liquor Commission when the Plaintiff worked there will further testify concerning the matters set out in the Complaint filed herein in paragraphs 20-29.

2. State all facts with specificity which you contend support the allegation contained in Paragraphs 34 through 36 of your Complaint that your First Amendment rights were violated, and as to each fact, state its source, identify each person who you know to have any information or knowledge concerning such fact or the aforesaid allegation, identify each document which supports, embodies, refers or relates to such fact or the aforesaid allegation, and the date(s) on which each fact occurred.

    ANSWER: See allegations of paragraphs 20-29 of the Complaint filed herein on February 5, 2004. As reflected in the Complaint, there was a pattern of harassment, hostility and intimidation directed against Plaintiff in retaliation for exercise of First Amendment rights of free speech by testifying before the Federal Grand Jury with respect to an ongoing investigation of corruption on the Liquor Commission. In addition to the allegations set out in paragraphs 20-29 of the Complaint, the following events occurred after the individual defendants became aware of Plaintiff's cooperation with the HPD/FBI investigation and were in retaliation for said cooperation.

    1. Meeting in February of 2002 with the four individual defendants at which time Plaintiff was asked to report to them on what was happening with respect to the aforesaid investigation and grand

jury proceeding. Plaintiff refused to agree to this to the visible displeasure of the individual defendants.

2. Meeting with Defendant Gaylord in April of 2002 wherein he instructed Plaintiff to remove the name of another enforcement officer employed by the Liquor Commission from a report that Plaintiff had previously submitted as part of a notice of violation issued to the Little Seoul hostess bar earlier that month. Plaintiff refused to do this and was then physically and verbally threatened by Defendant Gaylord and was reprimanded for not being loyal to the Liquor Commission. Subsequently Plaintiff did remove the reference to this enforcement officer from his report after notifying the FBI of his conversation with Defendant Gaylord.

3. Meeting in early March of 2002 between the individual defendants and Plaintiff, Arthur Andres and Kenneth Wright wherein Plaintiff, Andres and Wright were warned that they would end up like Charles Wiggins if they did not maintain their loyalty to the Liquor Commission.

4. July 2002 meeting between Plaintiff and Defendants Weatherwax and Hirai wherein Plaintiff was reprimanded by Defendant Weatherwax for making derogatory comments about the commissioners. During this meeting Defendant Weatherwax specifically mentioned statements apparently made by another enforcement officer, John Shimokawa that Plaintiff had made comments about the favorable treatment received by the Happy Days Chinese restaurant from Liquor Commission because two of the commission members frequently dined there.

5. The attitude of the Defendants towards Plaintiff changed noticeably commencing in February of 2002 after they became aware of his cooperation with the aforesaid investigation. Whereas all of them had been friendly in a professional and

2

businesslike way prior to that time, their attitude towards Plaintiff ranged from being cool and distant, to outright hostility.

In addition, a pattern of harassment toward Plaintiff started in February of 2002 which included the following:

a. His computer was consistently turned off when he was not present in the office. This would result in work that he was doing which had not been saved being completely lost and him having to do it over again. He also noticed that items on his desk had been moved and also that email that had been sent to him had either been opened or deleted. He says that this happened several dozen times.

b. He confirms that the protective body armor that he was keeping in his unlocked desk (which he was assigned after February of 2002 and which he remained at despite repeated requests that he be given a lock) was another incident of harassment.

c. The bad mouthing by the defendants, primarily Allan Gaylord and John Carroll, was passed onto him to Art Andres, Ken Wright and Steve Perry. Steve Perry basically said that the commission members had wanted him to write a letter about Kerry Shannon, but Steve refused to do so.

d. Kerry says that the assignments were bad because they were in out of the way places which were dangerous. For instance he started receiving assignments to places such as Mayor Wright Housing and Kuhio Park Terrace which were obviously more dangerous for Caucasians. He does not seem to have a problem with the shifts that he was getting.

e. Allan Gaylord was the person who voiced veiled threats regarding what would happen to Charles Wiggins and what had already happened to Warren Collazo. John Carroll and Wallace Weatherwax reinforced these threats by asking Gaylord questions about whether or not Collazo really had been killed.

3

    f.    Kerry confirms that he was receiving the "cold shoulder" from virtually all of his fellow inspectors in enforcement starting in February of 2002 except for Andres and Ken Wright.

    g.    In July of 2002 Kerry was reassigned to licensing which was fine with him because of the hostile atmosphere in enforcement, but he was forced to keep his desk in the enforcement section even after his assignment to licensing.

    h.    He received at least four anonymous phone calls threatening his life.

    i.    There was a dead rat found on his car in the garage

    j.    His car was stolen either at the very end of January or beginning of February 2002. A live bullet was left on the driver's seat and some chemical substance was put into his radiator which destroyed the transmission. Kerry cannot, however, confirm that this happened after the defendants became aware of his cooperation with the investigation.

    k.    Kerry claims to have reservations about his assignment to licensing because of the excessive computer use that would entail due to the amount of paper work. Kerry had sustained a neck injury in 1994 which was aggravated by this but the decision was made not to pursue this because an argument could be made that this was something that Kerry probably would have desired anyway.

Plaintiff was furthermore informed that the individual defendants were making derogatory remarks about him to other inspectors and asking them to keep an eye on Plaintiff.

Repeated attempts by Plaintiff to get the individual Defendants to do something about this pattern of harassment were simply ignored and this harassment continued up until Plaintiff's resignation in 2003.

In addition Plaintiff found that a number of violation notices which he had issued to Rainbow Country Liquors had either disappeared or were

simply not prosecuted. Plaintiff believes that this fact led to himself, another enforcement officer and City and County being sued by Rainbow Country Liquors for allegedly harassing the owner. Plaintiff told the individual defendants that the violation notices that he had issued to Rainbow Liquors should be adjudicated and that if that was done there would be no basis for the lawsuit. However, the individual defendants never acted on this.

3. State all facts with specificity which you contend support the allegation contained in Paragraphs 37 through 40 of your Complaint that you were unlawfully retaliated against in violation of H.R.S. § 378-62, and as to each fact, state its source, identify each person who you know to have any information or knowledge concerning such fact or the aforesaid allegation, identify each document which supports, embodies, refers or relates to such fact or the aforesaid allegation, and the date(s) on which each fact occurred.

ANSWER:   See answer to interrogatory no. 2.

4. State all facts with specificity which you contend support the allegation contained in Paragraphs 39 through 40 of your Complaint that Defendants failed to protect you from harassment and hostile conduct, and as to each fact, state its source, identify each person who you know to have any information or knowledge concerning such fact or the aforesaid allegation, identify each document which supports, embodies, refers or relates to such fact or the aforesaid allegation, and the date(s) on which each fact occurred.

ANSWER:   See answer to interrogatory no. 2.

5. State all facts with specificity which you contend support the allegation contained in Paragraphs 41 through 42 of your Complaint that Defendants conspired to create a hostile and

unpleasant working environment for you, and as to each fact, state its source, identify each person who you know to have any information or knowledge concerning such fact or the aforesaid allegation, identify each document which supports, embodies, refers or relates to such fact or the aforesaid allegation, and the date(s) on which each fact occurred.

ANSWER:    See answer to interrogatory no. 2.

6.  State all facts with specificity which you contend support the allegation contained in Paragraph 44 of your Complaint that you were forced to resign, and as to each fact, state its source, identify each person who you know to have any information or knowledge concerning such fact or the aforesaid allegation, identify each document which supports, embodies, refers or relates to such fact or the aforesaid allegation, and the date(s) on which each fact occurred.

ANSWER:    See answer to interrogatory no. 2. Because of the pattern of harassment that Plaintiff was subjected to, his emotional condition deteriorated. In 2002 Plaintiff used up all of his accrued sick leave and was forced to go on leave without pay. He was experiencing daily migraine headaches which lasted up to 16 hours in duration and was becoming paranoid. He was receiving anonymous phone calls wherein he and his son were threatened. In addition he was no longer able to sleep more than 3-4 hours per night because of his anxiety and paranoia. In January of 2003 after his son had come home from college to stay with him, his son went downstairs to use Plaintiff's car and found a dead rat on the hood. Plaintiff finally resigned on February 14, 2003 because he couldn't take it anymore. Within four weeks of his resignation he moved to the mainland and has since maintained a confidential mainland address out of fear for his well being and that of his son.

3

7.  State all facts with specificity which you contend support the allegation contained in Paragraphs 46 through 47 of your Complaint that Defendants intentionally inflicted emotional distress upon you, and as to each fact, state its source, identify each person who you know to have any information or knowledge concerning such fact or the aforesaid allegation, identify each document which supports, embodies, refers or relates to such fact or the aforesaid allegation, and the date(s) on which each fact occurred.

    ANSWER:    See answers to interrogatories 2 and 6.

8.  Identify all treatment sought or received as a result of your emotional distress referred to in your Complaint, including the full name, complete address, and telephone number of any physician, psychiatrist, psychologist, therapist, mental health counselor, or other health care provider by whom you were examined, treated or whom you consulted at any time, past and present, for any purpose relating to the allegations in the Complaint.

    ANSWER:    Dr. Linda Rasmussen, 46-001 Kamehameha Hwy., Suite 402, Kaneohe, HI 96744, ph: 235-6474

    Dr. Kurt Dawson, 202 Cullens St. NW, Yelm, WA 98597, ph: 360-458-7761

    MDSI Physicians Group, 344 Cleveland Ave. SE #G, Tumwater, WA, 98501, ph: 360-754-1575

4

9. With respect to each person listed in the preceding answer, state each disorder or condition for which each person treated or examined you and the approximate dates of treatment or examination.

   ANSWER: Dr. Rasmussen was Plaintiff's family physician who was treating him for neck pain from excessive computer work and prescribing medication for pain and depression, among other problems.

   Dr. Dawson is Plaintiff's family physician in Washington and is treating Plaintiff for the problems mentioned above.

   THE MDSI doctor evaluated Plaintiff's condition for a Social Security disability retirement as suggested by the Hawaii ERS. He recommended that Plaintiff be seen by another physician for his depression.

10. State the full name, complete address, and inclusive dates of confinement of every hospital or other institution in which you have been hospitalized, examined, or treated for any purpose at any time and describe the condition for which you were confined.

    ANSWER: Castle Hospital in Kailua for various treatments and surgeries from 1990 to 2002. One four day confinement in 1994 or 1995 for a knee operation performed by Dr. Robert Simmons (now retired).

11. Identify any other claim you or anyone on your behalf has made (including claims for workers' compensation) against any person or organization for damages, personal injury, or mental or emotional pain and suffering, including any claim related to the events alleged in the Complaint, and as to each such claim please state the date, type of claim, and amount sought for the injury sustained.

   ANSWER:    Plaintiff has had a total of 10 workers compensation claims since he started with the City. He doesn't have a record of every claim. Plaintiff has injured his right ankle, both knees, both shoulders, one eye, both hand and/or fingers, neck and various other areas such as a chemical burn to his leg and groin. The only dates he has are May 2002 and April 1994 for his shoulder and knee injury, respectively. Any and all settlements were only what was awarded by way of worker's compensation benefits from the medical evaluations performed by the doctors hired by the City.

12. With respect to your claim for damages, set forth:

   (a) The amount of compensatory damages you are claiming.

   (b) The amount of punitive damages you are claiming.

   (c) The manner in which the dollar amount of your damages was computed, including without limitation, each factor taken into account and each assumption, calculation and formula utilized.

   ANSWER:    (a) compensatory damages for lost past and future earnings. This is being computed by Jack Suyderhoud, Ph.D. and his report will be provided when it is finished. The amount Plaintiff will be requesting in compensatory damages for his emotional distress is undecided at this point in time.

               b. undecided at this point in time.

               c. Dr. Suyderhoud's report will be forwarded to the defense when it is completed.

6

13. Itemize any and all other losses or expenses incurred as a result of the facts alleged in the Complaint and for which you claim damages in this action.

    ANSWER:    Expenses attendant to Plaintiff's relocation to the State of Washington following his resignation from the Liquor Commission total $6,260.00 and are broken down as follows:

    1. Relocation expenses for automobiles and household furnishings including airfare for the Plaintiff-$4,600.00.

    2. Cost of cell phone service over and above local service which Plaintiff had before his move to Washington is $1,360.00.

    3. Maintaining confidential mainland mailing address-$300.00.

14. Identify each expert whom you have retained or specially employed regarding the claims which are the subject of this action who is not expected to be called as a witness, and with regard to each expert, state the following:

    (a) Each expert's address, occupation, and the identity of his or her employer or the organization which he or she is associated in a professional capacity.

    (b) The subject matter for which said expert was retained or employed.

    ANSWER:    (a) Jack Suyderhoud, Ph.D., 7149 Kukii, Honolulu, HI 96825. Occupation: economist. Employer: University of Hawaii.

    (b) Plaintiff's loss of past and future earnings and benefits as a result of his resignation from the Liquor Commission in February of 2003.

7

15. Identify each person who you will or may call as an expert witness at a trial of this action and, separately, as to each such person, state:

    (a) Each expert's address, occupation, and the identity of his or her employer or the organization which he or she is associated in a professional capacity.

    (b) The subject matter on which the expert is expected to testify.

    (c) A summary of the expert's qualifications within the field in which he or she is expected to testify.

    (d) The substance of the facts to which the expert is expected to testify.

    (e) The substance of the opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

    ANSWER: See answer to interrogatory no. 14. Dr. Suyderhoud's report will be provided to the defense as soon as it is finished.

16. Please provide a list of all exhibits you intend to introduce at trial.

    ANSWER: Plaintiff and his attorney have not decided on which exhibits they will use at trial. Certainly portions of Plaintiff's personnel records with the Liquor Commission and possibly portions of the personnel records of the individual defendants will be used. Plaintiff will provide a complete list of exhibits in accordance with the Federal Rules of Civil Procedure, the Local Rules and orders issued by the above court.

RESP-RAINS-1.wpd

## **VERIFICATION**

STATE OF HAWAII            )
                           ) SS.
CITY AND COUNTY OF HONOLULU )

_Kerry Shannon_ being first duly sworn on oath, deposes and says: That he has read the foregoing answers to interrogatories and same are true to the best of his knowledge and belief.

_____

Subscribed and sworn to before me this
_1_ day of _September_, 2004.

_____
Notary Public, State of Hawaii

My commission expires: _7/16/04_

[Notary seal: DAWN DANIELSON, NOTARY PUBLIC, STATE OF HAWAII]